UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LONDON DE'SHAWN NEAL,

        Petitioner,

  v.                                     Case No. 20-cv-600-pp

LARRY FUCHS,

        Respondent.

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS (DKT. NO. 13), DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY AND DISMISSING CASE WITH PREJUDICE**

On April 13, 2020, the petitioner, who is incarcerated at Columbia Correctional Institution and is representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2016 convictions in Waukesha County Circuit Court for second-degree sexual assault of a child and witness intimidation. Dkt. No. 1. On May 17, 2021, the court screened the petition, allowed the petitioner to proceed on his claims and ordered the respondent to answer or otherwise respond to the petition. Dkt. No. 8. Three months later, the respondent filed a motion to dismiss the petition on the ground of procedural default. Dkt. No. 13. The motion is fully briefed. This order grants the motion to dismiss and dismisses the petition and the case with prejudice.

## I. Background

### A. Underlying State Case

#### 1. *Criminal complaints*

On March 30, 2015, the State filed a criminal complaint in Waukesha County Circuit Court charging the petitioner with one count of first-degree sexual assault of a child under the age of sixteen with the use or threatened use of force or violence and one count of physical abuse of a child with the intent to cause bodily harm. Dkt. No. 13-7. The facts in the complaint alleged that "an attack had taken place between a male and female." Id. at 2. The complaint explained that a responding officer had identified the female victim as C.L.T. Id. According to the complaint,

> C.L.T. was visibly upset, crying, trembling and was hanging her head. . . . C.L.T. did provide a written statement to the officers. C.L.T. indicated that on March 18, 2015 she had been at her boyfriend's residence on Summit Avenue and then walked to her residence. . . . C.L.T. indicated that an unknown male came from the front door of 906 Summit Avenue and began following her. She indicated that she increased her speed but that he continued to follow her and increased his speed. The male gained on her and asked her what her name was. She indicated that she told him to leave her along [sic] and continued walking. C.L.T. stated that the male again caught up with her in front of 623 Lemira Avenue, in the City of Waukesha. At that time the male wrapped his right arm over her shoulder and grabbed her butt. C.L.T. indicated because of the unwanted contact she struck the male in the face with her right fist. She indicated that the male backed off and called her a bitch.
>
> C.L.T. indicated that she began walking away and then the male caught up to her and punched her in the right eye which caused her pain. She indicated that she was knocked back and that the male then pushed her to the ground. The male got on top of her and straddled her legs. C.L.T. indicated that she screamed and that the male was grabbing and groping her breasts and was attempting to get inside of her pants. She indicated that she later found her pants to be unzipped but was not sure how that happened. C.L.T.

indicated that the male was not able to get into her pants but did try to. C.L.T. indicated that she continued to scream for help and neighbors began to come outside and the male fled southbound through people's yards towards Horeb Park. C.L.T. did provide a description of the male subject and the clothes he was wearing. She further indicated that while the male was on top of her he yelled at her "be quiet girl or I'm a kill you."

Id.

The complaint stated that an officer "observe[d] redness and slight swelling to C.L.T.'s face where she was struck by the male subject." Id. C.L.T. identified the petitioner from a photo array and "indicated that she was 100% certain that he was the one who assaulted her." Id. The complaint also provided the petitioner's version of the events:

> [The petitioner] indicated that he was walking to the Speedway store located on Summit Avenue on the 18th from his aunt's residence. He stated that he needed to use a phone and saw a female on a phone and was going to ask her to borrow her phone. [The petitioner] stated that he touched the female on her shoulder and that she hit him in the face. He stated that he got angry, picked the girl up and threw her to the ground and then got on top of her and held her arms near her chest. He indicated that she hit him again so he punched her in the face. He stated that he was not going to let anyone hit him which is why he punched the girl. [The petitioner] stated that after he did that he got up and went to Speedway. [The petitioner] stated that he went there by going through some alleys. It should be noted that that area does not have alleys only open yards and [the petitioner] then acknowledged that he went through some yards to get there. [The petitioner] indicated that he believed the female was either 15 or 16 years old.

Id. at 3.

Finally, the complaint explained that a police officer "interview[ed] a witness . . . who indicated that he was alerted to two people fighting by his brother." Id. The witness "indicated that before he opened the door he heard the female screaming," and that "he saw the female struggling to get away and

3

that the male was grabbing at the female's vaginal area with his hand on top of her clothing." Id.

On February 5, 2016, the State filed a criminal complaint in Waukesha County Circuit Court charging the petitioner with two counts of felony intimidation of a witness. Dkt. No. 13-8. The facts in that complaint stated that

> C.L.T. had received a threatening letter in the mail from the Waukesha County Jail on August 6, 2015. . . . That letter was addressed to C.L.T. and indicated "I just want my boss out of jail okey only way that happens is if you don't come to court or drop the charges so think bout it's your life. He get 5 years he out you come to court you die. We from Shy-rack we shoot cops so don't think they can help you." The letter also indicates "don't let them get you kill [C.L.T.]. This is a letter for you to know not to come to court."
>
> . . .
>
> On November 10, 2015, Officer Kenealy met with C.L.T. and E.M.C. [C.L.T.'s mother]. E.M.C. indicated that she had received another letter addressed to C.L.T. The letter was sent from the Waukesha County Jail but had a return address identified as 623 Lemira Avenue in Waukesha and a sender name of Kler Htoo. E.M.C. indicated that her daughter is a victim in a current case in Waukesha County circuit court and that she believed it was from [the petitioner]. The letter was turned over to police and it was a hand written letter which stated "Listen [C.L.T.] I don't want to hurt you or your mom's but please don't force me to use these gun's against you I don't like how your people's mom's was in court don't let it happen again Allah is my witness you will die. P.S. tell yo boyfriend Jeff watch his back." The letter further indicated, "if he don't make it out of court without time you can say bye to Jeff cuz he goin to die." Also, "keep quite you cunt if not . . . we can settle for you we going to really fuck you or should we say rape you. . ."
>
> It should be noted that Kler Htoo is a witness in the case against [the petitioner] and lives at the address that was on the envelope.
>
> Detective Serrano did receive a report from the Wisconsin State Crime Lab, which indicated that the fingerprints of [the petitioner] were located on the handwritten note that was received by the victim in November of 2015.

4

Id. at 1-2.

  2. *Plea*

On March 14, 2016, the circuit court held a joint plea hearing regarding the two complaints. Dkt. No. 13-3 at 21. The petitioner entered no-contest pleas to one count of felony witness intimidation and one count of second-degree sexual assault of a child. Dkt. No. 13-2 at 1, 3. A month later, the court sentenced the petitioner to twelve years of initial confinement followed by eight years of extended supervision for the second-degree sexual assault of a child count. Id. It sentenced the petitioner to five years of initial confinement followed by five years of extended supervision for the felony witness count, consecutive to the sentence for the second-degree sexual assault of a child count. Id. The clerk entered judgment the following day. Id.

  3. *No-merit report and response*

On June 11, 2019, Attorney Hans Koesser filed a no-merit report in the Wisconsin Court of Appeals. Dkt. No. 13-3. Attorney Koesser concluded that the petitioner had entered his pleas knowingly, voluntarily and intelligently. Id. at 32. He determined that the circuit court did not abuse its sentencing discretion and that the sentences were not unduly harsh or unconscionable. Id. at 39. On July 5, 2019, the petitioner responded to Attorney Koesser's report. Dkt. No. 13-4. Stressing that he was not properly medicated throughout the proceedings in the trial court, the petitioner contended that his pleas were not knowing, voluntary and intelligent. Id. at 1. He argued that trial counsel

was ineffective for failing to adequately challenge the qualifications of a doctor who testified at the petitioner's competency hearing. Id. at 5-7.

### 4. *Wisconsin Court of Appeals decision*

On December 26, 2019, the court of appeals summarily affirmed the circuit court's judgments. Dkt. No. 13-5. Concluding that any challenge to the petitioner's pleas on appeal would be meritless, the court of appeals reasoned that the circuit court had "conducted a very thorough colloquy with [the petitioner]." Id. at 2. The appellate court observed that the petitioner "discussed information pertinent to entering his pleas with his counsel prior to the plea hearing, reviewed a plea questionnaire and waiver of rights form with his counsel, and informed the circuit court that he understood the information on the form." Id. (citing State v. Moederndorfer, 141 Wis. 2d 823, 827-28 (Ct. App. 1987)). It noted that the circuit court had explained to the petitioner "the effect of having two of the charges dismissed and read in for the purposes of sentencing" and that the petitioner had "agreed that the State had sufficient evidence to convict him based on the criminal complaints." Id.

The court of appeals found any challenge to the petitioner's sentence meritless. Id. at 2-3. According to the court of appeals, the record indicated "that the circuit court carefully considered the general objectives of sentencing and applied the sentencing factors to the facts of this case in framing its sentence." Id. at 3 (citing State v. Ziegler, 289 Wis. 2d 594, 606 (Ct. App. 2006)). The court found the circuit court's sentencing decision "well explained and reasonable." Id.

6

Regarding the petitioner's argument that his pleas were involuntary "because he was not being given his psychiatric medicine by the jail when these criminal proceedings were pending," the court found no basis for relief. Id. It reasoned that during the petitioner's plea colloquy, he had "informed the court that he was not being given his medicine." Id. "The circuit court then carefully questioned [the petitioner] about how this affected him, asking him whether he was thinking clearly and whether he felt stable and even keeled." Id. The petitioner had "responded affirmatively, acknowledging that his ability to think and understand was not adversely affected by the lack of medicine." Id.

The court saw "no arguable merit to a claim that [the petitioner] should be allowed to withdraw his plea because he did not intend to seek sexual gratification when he attacked the victim." Id. at 4. As the court explained, the petitioner "admitted that the State could use the complaint as a factual basis for the plea and agreed that the State had sufficient evidence to convict him of second-degree sexual assault." Id. at 3-4. Those facts indicated (1) "that the victim informed the police that [the petitioner] attacked her, hit her and threw her to the ground," (2) that the petitioner "then grabbed and groped her breasts and attempted to get inside her pants," and (3) that "a citizen witness saw [the petitioner] on top of the struggling victim and saw [the petitioner] grabbing her vaginal area through her clothing." Id. at 4. To the court, those facts "support[ed] the second-degree sexual assault conviction." Id. Finally, the court rejected the petitioner's claim that he should be able to withdraw his pleas

7

because he was confused and "was only doing what his lawyer told him to do." Id. The court found that the colloquy foreclosed any basis for relief. Id.

>    5.   *Petition for review*

On February 12, 2020, the petitioner filed a petition for review in the Wisconsin Supreme Court. Dkt. No. 13-6; see also State v. London D. Neal, Waukesha County Case No. 2016CF000166 (available at https://wcca.wicourts.gov). The petition raised two issues: whether the petitioner entered his pleas knowingly, voluntarily and intelligently, and whether trial counsel was ineffective for "failure to call independent expert witness and simply conceding to the states expert witness and conclusions." Id. at 4.

On February 12, 2020, the Wisconsin Supreme Court dismissed the petition. Dkt. No. 1-1 at 13; see also State v. London D. Neal, Appeal No. 2019AP000003 (available at https://wscca.wicourts.gov). The court's order explained that "[c]orrespondence received with [the petitioner's] filing show[ed] that he did not successfully place his petition for review in the prison mail system within the 30-day period for filing a petition for review." Dkt. No. 1-1 at 13. The court concluded that the petition was "untimely pursuant to §§ 808.10 and 809.62(1m), Wis. Stats., and First Wisconsin National Bank of Madison v. Nicholaou, 87 Wis. 2d 360 . . . (1979)." Id. On February 21, 2020, the petitioner filed a motion asking the Wisconsin Supreme Court to reconsider its decision dismissing the petition for review. Neal, Appeal No. 2019AP000003 (available at https://wscca.wicourts.gov). Four days later, the court denied the motion for reconsideration. Dkt. No. 1-1 at 12.

B.  Federal *Habeas* Petition (Dkt. No. 1)

On April 13, 2020, the petitioner filed this federal *habeas* petition. Dkt. No. 1. The petition asserted four grounds for relief: (1) the petitioner did not enter his no-contest pleas knowingly, voluntarily and intelligently; (2) ineffective assistance of trial counsel for failing to call an expert and "simply conceding to the state[']s expert witness and conclusions"; (3) ineffective assistance of counsel for allowing the petitioner to enter a no-contest plea "knowing he was not guilty"; and (4) ineffective assistance of counsel for allowing the trial court to sentence the petitioner based on his juvenile record. Id. at 6-9. On May 17, 2021, the court screened the petition, allowed the petitioner to proceed and ordered the respondent to answer or otherwise respond. Dkt. No. 8.

## II. Respondent's Motion to Dismiss

A.  Parties' Arguments

The respondent asks the court to dismiss the petition. Dkt. No. 13. He argues that the petitioner has procedurally defaulted all his claims because the Wisconsin Supreme Court "denied relief based on the independent and adequate state law ground that [the] petition for review was untimely." Dkt. No. 13-1 at 6. The respondent explains that the petitioner filed his petition for review in the Wisconsin Supreme Court more than two weeks beyond the statutory deadline for doing so. Id. at 7, 8. He argues that the court therefore properly denied the petition for review and the motion for reconsideration. Id. at 8-9 (citing Nicholaou, 87 Wis. 2d 360). The respondent concludes by

9

asserting that the Wisconsin Supreme Court's reliance on procedural bars for its denial of relief is an adequate and independent state law ground that precludes relief in this court. Id. at 9.

In his "breif [sic] in support of the habeas petition and response to the respondents (DCT 13:1)," the petitioner stresses the merits of his *habeas* claims. Dkt. No. 18. He says that he did not enter his no-contest pleas knowingly, voluntarily and intelligently and that trial counsel provided ineffective assistance of counsel. Id. at 1. Regarding the timeliness of his petition for review in the Wisconsin Supreme Court, the petitioner states:

> As far the issue of the denied motion/petition sent to the Supreme Court petitioner submitted letters as to why Petitioner Neal was late with his deadline and my deadline as on Jan, 25, 2020 which was a Saturday. Now petitioner Neal knows some things are out of his control like the institutions lack of staff and many other factors that scoured like the lockdown for prisoner when two prisoners escaped the institution, and staff was reassigned to different post around the institution this was the reasons for the delay in getting things done in the law library department and the fact that I did fill out a form wrong and he owned up to that mistake and ask the court to have mercy on him for his errors.

Id. at 7.

The petitioner asks the court to "grant [his] habeas petition brief without prejudice and not deny a certificate of appeal ability." Id.

B. Analysis

1. *Adequate and independent state law doctrine*

Under the Antiterrorism and Effective Death Penalty Act of 1996, a state prisoner must exhaust available state-court remedies before a district court will consider the merits of a constitutional claim in a federal *habeas* petition. 28

10

U.S.C. §2254(b)(1)(A). The exhaustion requirement gives the state an opportunity to pass upon and correct alleged violations of the federal rights of persons who are incarcerated by the state. Bolton v. Akpore, 730 F.3d 685, 694 (7th Cir. 2013). To exhaust his claims, "[a] petitioner must raise his constitutional claims in state court 'to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue.'" Weddington v. Zatecky, 721 F.3d 456, 465 (7th Cir. 2013) (quoting Villanueva v. Anglin, 719 F.3d 769, 775 (7th Cir. 2013)). To comply with this requirement, the incarcerated person must "fairly present" the claim in each appropriate state court. Bolton, 730 F.3d at 694-95. "The failure to present fairly each habeas claim in state court 'leads to a default of the claim[s] and bar[s] the federal court from reviewing the claim[s'] merits.'" Weddington, 721 F.3d at 456 (quoting Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010)). The courts call this circumstance "procedural default."

One of the ways a criminal defendant can "procedurally default" on a claim—thus losing his right to federal *habeas* review on that claim—is if the last state court that issued judgment "'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989) (quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985)). "Merits review of a habeas claim is foreclosed if the relevant state court's disposition of the claim rests on a state law ground that is adequate and independent of the merits of the federal claim." Triplett v. McDermott, 996 F.3d 825, 829 (7th Cir. 2021). "Federal habeas courts must ascertain for themselves if the petitioner is

in custody pursuant to a state court judgment that rests on independent and adequate state grounds." Coleman v. Thompson, 501 U.S. 722, 729 (1991). When considering whether a state court decision rests on a state procedural default, federal courts look to "the last explained state court judgment." Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991).

A state ground is independent "when the court actually relied on the procedural bar as an independent basis for its disposition of the case." Thompkins v. Pfister, 698 F.3d 976, 986 (7th Cir. 2012). "The test to avoid procedural default in federal court is whether the state court's decision rests on the substantive claims primarily, that is, whether there is no procedural ruling that is independent of the court's decision on the merits of the claims." Holmes v. Hardy, 608 F.3d 963, 967 (7th Cir. 2010). "If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." Ylst, 501 U.S. at 801. However, "a state court that separately reaches the merits of a substantive claim may also produce an independent procedural ruling that bars federal habeas review." Holmes, 608 F.3d at 967. The question is whether the state court's procedural ruling is primary. If it is, then the procedural ruling is independent. Id. As for adequacy, a state law ground is "adequate" "when it is a firmly established and regularly followed state practice at the time it is applied." Thompkins, 698 F.3d at 986. When considering the adequacy of a state law ground, the court does not consider "whether the review by the

12

state court was proper on the merits." Lee v. Foster, 750 F.3d 687, 694 (7th Cir. 2014).

In its order denying the petitioner's petition for review, the Wisconsin Supreme Court explained that:

> [a] petition for review was filed by [the petitioner], pro se, on February 12, 2020, from the court of appeals' decision of December 26, 2019. Correspondence received with [the petitioner's] filing shows that he did not successfully place his petition for review in the prison mail system within the 30-day period for filing a petition for review. The petition is untimely pursuant to §§ 808.10 and 809.62(1m), Wis. Stats., and First Wisconsin National Bank of Madison v. Nicholaou, 87 Wis. 2d 360, 274 N.W.2d 704 (1979);

Dkt. No. 1-1 at 13.

Because the petitioner's petition for review was not filed before the expiration of the thirty-day statutory deadline, the court had no jurisdiction to consider the petition for review. Nicholaou, 87 Wis. 2d at 362. This resulted in procedural default of the petitioner's claims. Id. The Seventh Circuit has held that missing the deadline for filing a petition for review in the Wisconsin Supreme Court constitutes an adequate and independent state procedural bar that forecloses *habeas* review. Buelow v. Dickey, 847 F.2d 420, 424-25 (7th Cir. 1988); Madyun v. Young, 852 F.2d 1029, 1032 (7th Cir. 1988).

Nevertheless, a federal court may review a state court finding on state procedural law if the finding is an "obvious subterfuge to evade consideration of a federal issue." Mullaney v. Wilbur, 421 U.S. 684, 691 n.11 (1975) (citations omitted). The Seventh Circuit has declined to enforce a procedural bar when the Wisconsin Supreme Court's rejection of a petition for review on timeliness

13

grounds was "interwoven with [a] merits determination" of a petitioner's claims. Farmer v. Litscher, 303 F.3d 840 (7th Cir. 2002).

The Wisconsin Supreme Court's denial of relief in this case was not an obvious subterfuge to evade consideration of a federal issue. The court dismissed the petition on timeliness grounds alone. It discussed none of the merits of the petitioner's claims. Unless the petitioner can show both cause and prejudice, this court cannot review the petitioner's procedurally defaulted claims.

### 2. *Cause and prejudice*

If a federal court determines that a petitioner's claims are procedurally defaulted, it must consider whether to excuse that default. Coleman, 501 U.S. at 750. A court may excuse default if the petitioner can show either (1) cause for the default and resulting prejudice, or (2) that the failure to consider the federal claim will result in a fundamental miscarriage of justice. Id. (citations omitted). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice means an error which so infected the entire trial that the resulting conviction violates due process." Weddington, 721 F.3d at 465 (quoting McKee, 598 F.3d at 382)). To show that a miscarriage of justice will occur if the court were to deny *habeas* relief, a petitioner must show that he is actually innocent of the offenses of which he was convicted. Hicks v. Hepp, 871 F.3d 513, 531 (7th Cir. 2017). A petitioner

14

asserting actual innocence as a gateway to a defaulted claim "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

In attachments to the brief opposing the motion to dismiss, the petitioner asserts that his "request for copies was not fulfilled in a timely manner and caused him to lose by default." Dkt. No. 18-1 at 1. He says that he made a "written request for copies on the same time he wrote the letter dated 1-22-21 [sic]." Id. at 2. The petitioner did not explain how his alleged inability to timely obtain "copies" prevented him from timely filing a petition for review in the Wisconsin Supreme Court, from asking the Wisconsin Supreme Court for an extension of time to file a petition for review or from otherwise avoiding procedural default. He did not explain what documents he sought to have copied or how the copies related to his petition for review.

The petitioner also attached several letters to his brief. The Supreme Court's dismissal of the petitioner's petition for review was dated February 14, 2020. Dkt. No. 18-1 at 18. The petitioner attached a letter addressed to the court of appeals dated January 22, 2020, in which he advised that court that some of his exhibits had been withheld but that he'd sent what he had in order to meet his deadline of January 25, 2020. Id. at 4. The "received" stamp from the court of appeals indicates that that court received the letter on February 12, 2020. Id. The petitioner also attached a letter to the court of appeals dated

15

January 30, 2020, in which he indicated that he was sending documents to prove that he tried to get his petition filed before the deadline was up. Id. at 5. The letter indicated that in rushing around to get the petition filed on time, the petitioner had "made a few mistake" and "fill out of few forms wrong." Id. He stated that instead of getting "it" back to him in a reasonable time, he was forced to wait on the institution business office. Id. He asked the court to accept his petition, asserting that "some of the issues" were not his fault. Id.

Finally, the petitioner attached a letter to the Supreme Court dated February 1, 2020, in which he asserted that his institution was stopping him every chance it got. Id. at 3. He asserted that after the institution sent him his exhibit and he sent it "to you," he tried to send his petition on January 29, 2020, but "they" sent it back on January 30, 2020 with copies of his exhibit and "said one case # for one disbursement instead of waste both of our time with nonsense . . . ." Id. The petitioner asked that he not be punished for "their errors." Id.

The petitioner correctly calculated that in order to timely file his petition for review, he needed to file it by January 25, 2020—that is thirty days from the court of appeals' December 26, 2019 decision. Nicholaou, 87 Wis. 2d at 365 (the time limit for filing a petition for review under §808.10 runs from the date of the opinion). For a petition for review to be "filed," it must "be received by the office of the clerk [of the Supreme Court] . . . ." Id. The Supreme Court found, based on the letters the petitioner presented, that "he did not successfully place his petition for review in the prison mail system within the 30-day period

16

for filing a petition for review." Dkt. No. 18-1 at 18. The petitioner has provided the court with explanations for why he did not timely file the petition—it took too long to get copies, January 26 was a Saturday, he has subsequently learned that there was a prison lockdown and there were staffing changes that caused delays in the law library. The petitioner has not explained, as the court has noted, why he needed copies or what he needed copies of, why the fact that January 26 was a Saturday matters, why the prison lockdown or staffing changes impacted his ability to timely file his petition.

Even if these things constituted "cause" for the petitioner's procedural default, he has not demonstrated prejudice. The petitioner has not demonstrated that there was an error that so infected his case that his conviction violated due process. The Wisconsin court of appeals addressed some of the claims he has raised in this federal petition, such as his claim that he did not enter his pleas knowingly, intelligently and voluntarily, and the plaintiff has not demonstrated that that court incorrectly applied the law or the facts. Some of his federal *habeas* claims appear to be new, which means that he did not present them to the state court and thus that he did not exhaust those claims.

Because the petitioner has procedurally defaulted on the claims he raises in this federal *habeas* petition, the court will grant the respondent's motion to dismiss the petition.

17

### III. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because no reasonable jurist could debate that the petitioner procedurally defaulted on his claims.

### IV. Conclusion

The court **GRANTS** the respondent's motion to dismiss the petition. Dkt. No. 13.

The court **DECLINES TO ISSUE** a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 16th day of February, 2022.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**